HODGKIN V. FRY, COLLECTOR.

SCHOOL DISTRICTS:—*Notice of Elections for directors and voting tax.*

It was the duty of the district school trustee under the former law, and now of the directors, to designate the place of meeting for electing directors and voting taxes for school purposes, and notice of the time and place of meeting is essential to the validity of the tax. But the statute designates the *time* for the meeting, and all are bound to take notice of it. If notice of the *place* be given, the meeting will be legal, though the *time* be not specified in the notice.

DISTRICT SCHOOL TAX—

Unless the judges make return of the election or vote, to the County Court, it can not levy the tax.

APPEAL from *Chicot* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*Reynolds*, for appellant.

*Valentine, contra.*

HARRISON, J. :

Edgar G. Hodgkin, in behalf of himself and all other taxpayers of school district No. 9, in the county of Chicot, filed his complaint in equity against Reuben M. Fry, as collector of taxes of said county, to enjoin the collection of the school tax of said district, levied by the County Court for the year 1876.

The complaint alleged that the tax was levied by the County Court without a vote therefor by the electors of the district.

No annual school district meeting, it averred, was held on the third Saturday in August, 1876, and no notice for such a meeting was given either by the trustee or the sheriff, but that fourteen, of about four hundred electors of the district, met together on that day at the court-house in Lake Village, and organized themselves as the annual school meeting of the district, and having chosen three judges and one clerk for that purpose, proceeded to hold an election for three directors, and proceeded to determine whether any and what tax should be levied for

that year; and they voted a tax of five mills; a report of which proceedings was filed with the county clerk; but no return of the result of the election was made by the said judges to the County Court.

The report of said proceedings, a copy of which was filed as an exhibit with the complaint, was as follows:

"Pursuant to call the annual school meeting of McConnell school district No. 9, Chicot county, Arkansas, met at the court-house, in the town of Lake Village, Saturday, August 19th, 1876, at 2 o'clock, p. m., to order by the trustees, and was organized by electing S. H. Holland, chairman, who explained the object of the meeting.

The trustee read his report for the past year, which, on motion was received and adopted. On motion, the meeting proceeded to the election of three school directors; and Aaron Walker, Phan Walker and William Miles, were chosen judges of the election, and W. H. Logan appointed clerk, who were duly sworn *  *  *  *  *  *  *  *  *

*  *  *  * And the votes being counted, the judges reported as follows: *  *  *  *  *  *  *

For tax, 5 mills.............................. 14 votes.

Against................................. ..... no votes.

*  *  *  *  *  *  *  *

*  *  *  * On motion, the school directors were instructed to have taught each school in the district a term of three months, and as much longer as they may be able.

A copy of the proceedings of this meeting was directed to be filed with the county clerk.

On motion, the meeting adjourned.

H. W. GRAVERS, Clerk.        S. H. HOLLAND, Ch'm."

The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of

action. The court sustained the demurrer and dismissed the complaint. The plaintiff appealed.

The act "to maintain a system of free common schools," of December 7th, 1875, is a revision of the former school law. It retains the provisions for the annual school meeting of the district, on the third Saturday in August, in each year, but more particularly directs the mode of proceeding at such meetings, in determining the tax to be levied, and provides for the election, at the first annual school meeting, of three directors in place of a trustee.

The former law—*Section 5436, Gantt's Digest*, required the trustee to give notice of each annual, and of each special meeting, by posting notices thereof at least fifteen days previous to such meeting, in three or more conspicuous places in the district, which duty is now required of the directors; and the first section of the act of December 1st, 1875, requires the sheriff, by proclamation, to give twenty days notice of the time and place of holding the election for ascertaining the will of the electors as to the tax; which provision, not being inconsistent with the act of December 7th, 1875, is not repealed by it; and the notice by the sheriff is additional to that given by the directors, or formerly by the trustee.

It is somewhat remarkable that we find no where in the present, or in the former law, any provision fixing the place of the annual meeting, or in any very clear terms, indicating whose duty it is to designate it. As, however, the trustee, formerly, and the directors now, "have charge of the school affairs and the local educational interests" of the district, it must necessarily have devolved on the former, and now on the latter.

Notice of the time and place of voting the taxes is essential to its validity. Judge Cooley says: "A popular assembly for any legal purpose must be regularly convened in such manner

as the law may have prescribed. The coming together of a majority of the people of a municipality, or even of all the people, at a time and in a manner not provided for by law, and the voting upon the levy of a tax, will have no legal force or validity whatever. In levying taxes, or in exercising any other function of government, the local community are wielding a part of the sovereign power of the State, but only with the State's permission, and under such conditions, instructions and regulations as the State has prescribed. One of these invariably is, that the power shall be exercised in an orderly manner, at a meeting assembled after due notice, and conducted according to legal forms, in order that there may be full opportunity for reflection, consultation and deliberation upon the important work to be done." *Cooley on Taxation*, 245.

The statute having fixed the time of the annual school meeting, all are bound to take notice of it. The right to hold the meeting comes from the statute, and not from the published notices, which are but to remind the people that the law has provided for such a meeting; and though omitted, the meeting then held at the place legally appointed and in accordance with the provisions of the statute in regard thereto, is the lawful annual school meeting of the district. *Ib.*, 246.

But it is as important and essential to its authority that it be held at the proper place as at the proper time.

There is nothing, however, in the record before us to show that the place at which the meeting referred to in the complaint, was appointed by the trustees, whose duty, we have before said, it was to fix or designate it; and consequently it does not appear that said meeting had the power to vote the tax.

The act of December 9, 1875, went into force at the date of its passage, but the first election for directors did not take place until at the annual school meeting on the third Saturday

in August, 1876, and until then the teachers necessarily con-tinued in office.

The first section of the act of December 1, 1876, before mentioned, is as follows :

"Be it enacted, etc., That hereafter an election shall be held in every school district in this State on the third Satur-day in August in every year, for the purpose of ascertaining the will of the qualified electors, and the rate of taxation for school purposes within such district; which election shall be held and conducted as other elections ; and the sheriff of each county shall give twenty days notice of the time and place of holding such election, by proclamation throughout the county ; and the returns of such election shall be made to the county clerk of the county in which such election is held, who shall certify the result to the County Court of such county, which shall proceed to levy the tax thus voted, in the manner now required by law."

Among other provisions of Sec. 56 of the act of December 7, 1875, concerning the annual school meeting and its powers, are the following: "The annual district election shall be held by the school directors as judges, who shall have power to appoint two clerks ; and if any of the directors should not attend, the assembled voters may choose judges in the place of those not attending, and the judges and clerks shall take the oath prescribed by the general election law. The ballot of the vote shall, in addition to the name of the persons voted for as directors, have written or printed on it the words, "for tax," or "against tax," and also the amount of the tax the voter desires levied. When the polls are closed the judges shall pro-ceed to count the votes, ascertain the result and make return thereof to the County Court, showing the number of votes cast for each person voted for for school director ; also the number cast for and against tax ; and the number of votes cast

for each amount or rate of tax voted for. Such return, together with the ballots, shall be sealed up and delivered by one of the judges to the county clerk at least ten days before the meeting of the County Court for levying the taxes.

"In other respects the election shall be held according to the general election law."

It was provided by Sec. 59, that at the first annual school meeting after the passage of the act, (which was that in 1876),. three directors should be elected for one, two and three years. respectively.

So far, if at all, as the provisions of the act of December 1, 1875, are inconsistent with the provisions of the act of December 1, 1876, just read, they are repealed by the latter act.

It evidently was the intention of the Legislature, that after the passage of the act revising the whole school system, the tax should be voted and the election conducted and the return made in the manner there provided; although at the first election thereafter there could be no directors to serve as judges. According to the general election law, when the judges appointed by the County Court are not present when the polls. are to be opened, the electors may appoint others; and at all subsequent elections under the act, if any of the directors do not attend, the electors may choose other judges.

It is therefore clear to our minds, that the electors should have appointed, as they did do, the judges for that election.

But it was alledged, and the demurrer admitted it, that the judges made no return of the election or vote to the County Court. Without such return the County Court had no authority to levy the tax. *Murphy* v. *Harbison*, 29 Ark., 132;. *Cairo & Fulton Railroad Co.*, v. *Parks*, 32 Ark., 131;. *Worthen* v. *Badgett*, *Ib.*, 496.

"Every essential proceeding in the course of the levy of taxes must appear," say the Supreme Court of Michigan, "in
45

some written and permanent form in the records of the bodies authorized to act upon them." *Moser* v. *White*, 29 Mich., 59 ; *Cooley on Taxation*, 247.

Had there been no change in the law as to the manner of voting the tax, and making return to the County Court, and had the assemblage of electors on the third Saturday in August been the annual school meeting of the district, the report of its proceedings filed with the county clerk would, perhaps, have authorized the levy of the tax by the County Court ; but the law requiring the judges of the election to make the return, their return could alone be considered or acted upon by the court.

The decree of the court below is reversed and the cause is remanded for further proceedings.